Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MIGDALIA LÓPEZ GÓMEZ<br><br>*Apelante*<br><br><br>v.<br><br><br>ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>*Apelado* | KLAN202300292 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K AC2017-0014 (908)<br><br><br>Sobre:<br>Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

Comparece Migdalia López Gómez (señora López Gómez o parte apelante) mediante recurso de *Apelación* y nos solicita la revocación de la *Sentencia* emitida el 6 de diciembre de 2022, notificada el 16 de diciembre de 2022, por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario). Mediante el referido dictamen, el foro primario desestimó con perjuicio la demanda presentada por la apelante.

Por los fundamentos que exponemos a continuación, **confirmamos** la *Sentencia* apelada.

**I.**

Según surge del expediente ante nos, el 11 de enero de 2017, la parte apelante presentó una *Demanda*[1]*,* por derecho propio, sobre sentencia declaratoria, interdicto preliminar y permanente, daños y perjuicios contra la Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA), el Estado Libre Asociado de Puerto

---

[1] Véase apéndice del recurso, págs. 124-132.

Rico (ELA) y la Administración de Sistemas de Retiro (ASR) (en conjunto parte apelada). En síntesis, alegó que el 3 de octubre de 2016 su patrono, la AEELA, le notificó mediante carta que era elegible para acogerse al Programa de Preretiro Voluntario (Programa de Preretiro) creado por la derogada Ley Núm. 211 de 8 de diciembre de 2015, según enmendada, conocida como *Ley del Programa de Preretiro Voluntario* (Ley Núm. 211-2015)[2], por lo que debía indicar, dentro del término de treinta (30) días, si interesaba acogerse al mismo. Sin embargo, adujo la parte apelante que dicha notificación fue defectuosa debido a que la AEELA no cualifica para implementar el Programa de Preretiro a sus empleados por ser una agencia deudora de la ASR. Por otro lado, alegó que la AEELA tenía la obligación legal de indicar con certeza la cantidad de la pensión que se le estaba ofreciendo, de manera que la demandante pudiera ofrecer un consentimiento ilustrado, pero solo se le informó una pensión aproximada, sin certeza. Además, señaló que la Ley Núm. 211-2015 dispone que de aceptar el preretiro, se entendería que renuncia a toda causa de acción laboral. Por tanto, sostuvo que, la Ley Núm. 211-2015 adolece de defectos de naturaleza constitucional.

El 9 de febrero de 2017, la ASR presentó una *Moción en solicitud de desestimación*[3] en la que alegó que, la controversia planteada por la parte apelante versa sobre la constitucionalidad de la Ley Núm. 211-2015 y el proceso que ha llevado a cabo su patrono, la AEELA, en cuanto a su solicitud de preretiro. Así, señaló que, según dispone el Art. 12(b) de la Ley Núm. 211-2015, le compete al director de la Oficina de Gerencia y Presupuesto (OGP) implementar dicha ley, por lo cual sostuvo que procede la desestimación de la acción en su contra.

---

[2] 3 LPRA ant. sec. 9261, *et. seq.*
[3] Véase apéndice del alegato en oposición de la AEELA, págs. 1-2.

Posteriormente, el 27 de febrero de 2017, la parte apelante presentó una *Demanda enmendada*[4] a los fines de incluir una causa de acción basada en la Ley Núm. 115 de 20 de diciembre de 1991, según enmendada, conocida como *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial* (Ley Núm. 115-1991)[5] Además, añadió a oficiales de la AEELA y a la Oficina de Gerencia y Presupuesto (OGP) como demandados.

Por su parte, el 1 de diciembre de 2017, la AEELA presentó *Moción de desestimación a demanda enmendada y moción in limine*[6]. En esencia, arguyó que la parte apelante nunca se acogió al Programa de Preretiro ni inició los trámites pertinentes. Por ello, argumentó que la reclamación de la parte apelante se tornó académica debido a que la Ley Núm. 211-2015 fue derogada por la Ley Núm. 106 de 23 de agosto de 2017, según enmendada, conocida como "*Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos* (Ley Núm. 106-2017)[7], por lo que no existe un trámite pendiente ante la consideración de la OGP. Además, se solicitó la eliminación de las alegaciones contra el representante legal de la AEELA por expresiones hechas en vista celebrada el 13 de febrero de 2017.

El 12 de marzo de 2018, la parte apelante presentó una *Oposición preliminar a la moción de desestimación y moción in limine*[8]. Adujo que el escrito presentado por la AEELA no procede en derecho ni como cuestión procesal ni como cuestión sustantiva. Añade que la Ley Núm. 211-2015 no opera en el vacío y no confiere facultades ultra vires a la AEELA para hacer determinaciones, tomar

---

[4] Véase apéndice del recurso, págs. 135-165.
[5] 29 LPRA sec. 194.
[6] Véase apéndice del alegato en oposición de la AEELA, págs. 3-33.
[7] 3 LPRA sec. 9531 *et seq.*
[8] Véase apéndice del alegato en oposición de la AEELA, págs. 260-265.

decisiones y realizar procedimientos de manera ilegal y antijurídica. En cuanto a la moción *in limine,* señala que necesita un tiempo adicional para ser considerada y evaluada por su representación legal. Por último, sostiene que la reclamación instada contra la AEELA no se ha tornado académica.

El 17 de abril de 2018, la AELLA presentó una *Réplica a moción a "moción preliminar a moción de desestimación y moción in limine*[9]. En su escrito reiteró lo argumentos previamente expuestos.

Luego de varios trámites procesales que no son necesarios pormenorizar, el 6 de diciembre de 2022, notificada el 16 de diciembre de 2022, el TPI emitió una *Sentencia*[10] mediante la cual desestimó con perjuicio la demanda presentada por la apelante. En específico, el foro primario resolvió lo siguiente:

> [S]e declara **HA LUGAR** la *Moción en solicitud de desestimación a demanda enmendada y moción in limine* presentada el 1 de diciembre de 2017 y la *Réplica a moción en oposición de moción de desestimación presentada por la demandada Administración de los Sistemas de Retiro suscrita por la parte demandante y Moción reiterando solicitud de desestimación presentadas por la Asociación el 1 de diciembre de 2017 y el 17 de abril de 2018* presentada el 4 de diciembre de 2020, ambas presentadas por la Asociación. Además, se declara **HA LUGAR** la *Moción en solicitud de desestimación* presentada el 9 de febrero de 2017 por Sistemas de Retiro. (Énfasis en el original)[11].

En desacuerdo, el 3 de enero de 2023, la parte apelante presentó una *Moción en solicitud de determinaciones de hechos adicionales y reconsideración*[12]. Por su parte, el 16 de febrero de 2023, la AEELA presentó su oposición[13]. El 7 de marzo de 2023, notificada el 8 de marzo de 2023, el foro primario emitió *Resolución*[14] mediante la cual denegó la moción instada por la parte apelante.

---

[9] Véase apéndice del alegato en oposición de la AEELA, págs. 266-285.
[10] Véase apéndice del recurso, págs. 21-43.
[11] Véase apéndice del recurso, pág. 43.
[12] Véase apéndice del recurso, pág. 4-19.
[13] Véase apéndice del alegato en oposición de la AEELA, págs. 741-856.
[14] Véase apéndice del recurso, págs. 1-2.

Inconforme, el 10 de abril de 2023, la parte apelante acude ante este Tribunal mediante recurso de *Apelación* en el que le imputa al TPI la comisión de los siguientes errores:

**Error Número Uno**: Erró el TPI al desestimar la Demanda Enmendada de la demandante de manera contraria el estado de derecho aplicable a la evaluación necesaria para una desestimación sumaria de una demanda, por dejar de exponer una reclamación al que se le pueda conceder un remedio, al no tomar en consideración que en la misma se especificó que la demandada le había informado a la demandante, durante una vista efectuada el **13 de febrero de 2017**, que no le reconocería ni concedería el preretiro, así que la denegatoria y la causa de acción por daños relacionadas, tal como la de represalias contenidas en la Demanda Enmendada del **27 de febrero de 2017**, se había configurado antes de la aprobación de la Ley 106 de 2017 el **23 de agosto de 2017**, aprobada seis meses más tarde, especialmente cuando esta legislación no tenía el efecto de justificar una desestimación de la Demanda Enmendada de la demandante, ni tornaba la acción en una académica (como no se han tornado académico numerosos otros casos que han realizado reclamaciones relacionados con el Programa de Preretiro creado por la Ley 211 de 2017).

**Error Número Dos**: Erró el TPI al entender que no era aplicable al caso de epígrafe lo resuelto por el TA en el caso Vilma Ortiz v. Estado Libre Asociado, SJ2020CV00176, puesto que, según surge de la propia Sentencia de la cual se apela, el TPI entendió erróneamente que ese caso era distinguible puesto al de la demandante, puesto que supuestamente la señora Ortiz había presentado su solicitud para acogerse al preretiro, mientras que la demandante no la había presentado cuando lo cierto es que ninguna presentó la solicitud por causas atribuibles a los patronos incumplidores: por esta razón el TA autorizó a la señora Ortiz enmendara su demanda para incluir al patrono como parte demandada para hacerle a este los reclamos correspondientes.

**Error Número Tres**: Erró el TPI al entender que la "derogación" de la Ley 211 de 2015 a que se refiere la Ley 106 de 2017 tiene el efecto legal de hacer que la demandante no tenga causa de acción, sin tomar en consideración el mencionado caso de Ortiz v. Estado Libre Asociado, SJ2020Cv00176, caso presentado ante los foros judiciales **luego** de la aprobación de la Ley 106 de 2017, así como otros varios casos llevados a la atención del foro judicial con reclamaciones también relacionadas con el preretiro provisto por la Ley 211 de 2015 donde se le estaba negando a los empleados también el preretiro, todas presentadas ante el foro judicial luego de la aprobación de la Ley 106 de 2017 y consideradas tanto por el TPI y por este Honorable TA. Se hizo evidente en la jurisprudencia que la Ley 106 de 2017 no tenía como efecto legal el que se pudieran desestimar las acciones que estuvieran reclamando preretiro, aún en casos en que las solicitudes de preretiro de los empleados no se hubieran sometido ante la Oficina de Gerencia y Presupuesto.

**Error Número Cuatro**: Erró el TPI al entender que no era necesario que la Asamblea de Delegado y su Comité Ejecutivo aprobaran la implantación del Programa de Preretiro en la Asociación antes de entregar la "Notificación de Elegibilidad"

a la demandante como empleada de la Asociación para ofrecerle preretiro.

**Error Número Cinco**: Erró el TPI al resolver que era suficiente la "intención de pagar" (sin plan de pago, según exigido por la Ley 211 de 2015) de la Asociación para que la "Notificación de Elegibilidad" entregada a la demandante fuera válida a la fecha en que se le entregó a la demandante, el 3 de octubre de 2016.

**Error Número Seis**: Erró el TPI al indicar que la demandada no tenía obligación legal alguna de indicar alguna certeza en cuanto a la cantidad de la pensión "aproximada" que se le estaba ofreciendo, de manera que la demandante pudiera ofrecer un consentimiento ilustrado para poder considerar la oferta de preretiro y no toma en consideración tampoco que el patrono tenía la obligación legal de dar a la empleada una orientación de naturaleza financiera relacionada con su retiro, según exigido de manera expresa por la Ley de Preretiro, Ley Número 211 de 2016.

El 8 de mayo de 2023, la AEELA presentó una *Solicitud de orden al amparo de las Reglas 16 (E) y 74 del Reglamento del Tribunal de Apelaciones*. El 10 de mayo de 2023, la AEELA presentó *Alegato en oposición a recurso de apelación*. En síntesis, adujo que la parte apelante carece de capacidad jurídica para cuestionar los méritos y fundamentos de la Sentencia apelada debido a que nunca presentó solicitud para acogerse a los beneficios de la Ley Núm. 211-2015. Destacó que la referida ley fue derogada por la Ley Núm. 106-2017, por lo que la reclamación de la parte apelante se tornó académica.

El 30 de mayo de 2023, la Junta de Retiro del Gobierno de Puerto Ricio presentó *Moción informativa, en solicitud de orden y uniéndonos al alegato en oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**II.**

**-A-**

La Regla 10.2 de Procedimiento Civil[15], en su inciso 5 establece como fundamento para la desestimación de un pleito, el

---

[15] 32 LPRA Ap. V, R. 10.2; *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

"[d]ejar de exponer una reclamación que justifique la concesión de un remedio[16]. En lo pertinente, la referida regla dispone:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) Falta de jurisdicción sobre la materia.
>
> (2) Falta de jurisdicción sobre la persona.
>
> (3) Insuficiencia del emplazamiento.
>
> (4) Insuficiencia del diligenciamiento del emplazamiento.
>
> (5) Dejar de exponer una reclamación que justifique la concesión de un remedio.
> (6) Dejar de acumular una parte indispensable[17].

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra mediante moción fundamentada por cualquiera de los motivos en ella expuestos[18]. En particular, la Regla 10.2 (5) de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud de desestimación en que la demanda no expone "una reclamación que justifique la concesión de un remedio". En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales[19].

En estos casos, procede la desestimación de la reclamación judicial cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno[20]. Para llegar a dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda[21]. A su vez, las alegaciones deberán ser interpretadas "de forma conjunta, liberal y lo más favorable posible

---

[16] *González Méndez v. Acción Social et al.*, 196 DPR 213, 234 (2016); 32 LPRA Ap. V, R. 10.2(5).
[17] *Íd.*
[18] *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013).
[19] *Montañez v. Hosp. Metropolitano*, 157 DPR 96 (2002).
[20] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010).
[21] *Colón v. Lotería*, 167 DPR 625, 649 (2006).

para la parte demandante"[22]. Es decir, la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación[23].

Tal y como expresa el Tribunal Supremo, lo más importante a la hora de evaluar la procedencia de una moción de desestimación es lo siguiente:

> Tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz v. Junta de Directores*, 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Development*, 187 DPR 649 (2013).

## -B-

La derogada Ley Núm. 211 de 8 de diciembre de 2015, conocida como *Ley del Programa de Preretiro Voluntario* (Ley Núm. 211-2015)[24], creó el Programa de Preretiro Voluntario (Programa de Preretiro), el cual ofrecía a los empleados en el servicio de carrera, la oportunidad de separarse voluntariamente de sus funciones al cumplir con ciertos requisitos del retiro[25].

Para participar del Programa de Preretiro, los empleados debían satisfacer ciertos requisitos de elegibilidad. Conforme a la Ley Núm. 211-2015, el procedimiento para posibilitar la participación del programa era uno interagencial y el Director de la Oficina de Gerencia y Presupuesto (OGP) ostentaba la facultad para implantarlo[26]. Asimismo, este tenía el poder para establecer el procedimiento para su implementación[27]. No obstante, la ley

---

[22] *Íd.*
[23] *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).
[24] 3 LPRA ant. sec. 9261 *et seq.* Esta Ley fue derogada por la Ley Núm. 106 de 23 de agosto de 2017, según enmendada, conocida como *Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos*, 3 LPRA sec. 9531.
[25] Art. 3 de la Ley Núm. 211-2015, 3 LPRA ant. sec. 9262.
[26] Art. 12 de la Ley Núm. 211-2015, 3 LPRA ant. sec. 9271.
[27] *Íd.*

estableció unos estándares mínimos con los que debía cumplir dicho procedimiento. Así, dispuso que cada entidad gubernamental, siempre que cualificara y estuviera interesada, debía presentar la solicitud para acogerse al Programa de Preretiro. Dicha solicitud debía incluir la Tasación de Implementación y el Plan Patronal de Preretiro[28]. La Tasación de Implementación del Programa de Preretiro se debía presentar a la OGP en un término no mayor de sesenta (60) días desde que la ley entró en vigor[29].

Una vez presentada la solicitud, la OGP tenía un término máximo de sesenta (60) días, prorrogables por treinta (30) días adicionales, para evaluar su viabilidad. La OGP solo podía aprobar la solicitud si se determinaba que, en efecto, representaba un ahorro para la entidad gubernamental[30]. Por otro lado, la Ley también dispuso que notificaría al empleado su elegibilidad para solicitar al Programa[31]. A partir de dicha notificación, **el empleado tenía treinta (30) días para ejercer su opción** de participar en el Programa de Preretiro[32].

Posteriormente se aprobó la Ley Núm. 170 de 9 de agosto de 2016 para enmendar varios artículos de la Ley Núm. 211-2015. No obstante, la Ley Núm. 211-2015 fue derogada por la Ley Núm. 106 de 23 de agosto de 2017, según enmendada, conocida como *Ley para Garantizar el Pago a Nuestros Pensionados y Establecer un Nuevo Plan de Aportaciones Definidas para los Servidores Públicos* (Ley Núm. 106-2017)[33]. Con relación al Programa de Preretiro, el Artículo 7.1 de esta Ley dispone:

> a) Se deroga la Ley 211-2015, según enmendada, conocida como "Ley del Programa de Preretiro Voluntario". No obstante, se garantizan todos los derechos y obligaciones creados al amparo de dicho estatuto.

---

[28] *Íd.*
[29] Art. 4 de la Ley Núm. 211-2015, 3 LPRA ant. sec. 9263.
[30] Art. 12 de la Ley Núm. 211-2015, 3 LPRA ant. sec. 9271.
[31] *Íd.*
[32] *Íd.*
[33] 3 LPRA sec. 9531 *et seq.*

b) Aquellos Preretirados que se encuentran participando del Programa de Preretiro Voluntario al momento de aprobarse la presente Ley, continuarán disfrutando del mismo de acuerdo a las disposiciones establecidas bajo la Ley 211-2015, según enmendada.

c) Las solicitudes de Preretiro, conforme al Programa de Preretiro Voluntario que hayan presentado debidamente los Participantes a la fecha de aprobación de esta Ley, continuarán el trámite ordinario. Se garantizarán los mecanismos de revisión, según dispuestos en la Ley 211-2015, según enmendada, y cualquier otro estatuto aplicable.

d) Se les garantizará a los Participantes cuyos beneficios de Preretiro hayan sido previamente aprobados por la Oficina de Gerencia y Presupuesto, de acuerdo a lo dispuesto en la Ley 211-2015, según enmendada, el acogerse a los beneficios de dicho Programa.

e) En o antes del 1 de agosto de 2019, la Oficina de Gerencia y Presupuesto deberá revaluar las solicitudes de Preretiro que fueron presentadas oportunamente por las entidades gubernamentales conforme al Programa de Preretiro Voluntario y denegadas por la Oficina de Gerencia y Presupuesto. El periodo antes expresado podrá ser extendido por OGP de existir circunstancias extraordinarias que ameriten dicha gestión. Ley Núm. 106-2017[34]. (Subrayado nuestro).

Con la aprobación de esta Ley se declaró un estado de emergencia financiera de los sistemas de retiro[35]. De manera simultánea, se estableció como política pública del Estado la protección de las pensiones de los empleados públicos retirados partícipes de ciertos programas[36]. A esos fines, si bien se derogó el Programa de Preretiro, se mantuvo un procedimiento para continuar atendiendo las **solicitudes presentadas** y garantizar las participaciones activas del mismo[37].

**-C-**

Los tribunales solamente podemos evaluar aquellos casos que son justiciables[38]. Una controversia no es justiciable cuando: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito

---

[34] 3 LPRA sec. 9581.
[35] 3 LPRA sec. 9533.
[36] 3 LPRA sec. 9534.
[37] 3 LPRA sec. 9581.
[38] *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 931 (2011).

han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro[39]. Las doctrinas que dan vida al principio de justiciabilidad son: legitimación activa, academicidad y cuestión política[40].

Entre estas doctrinas, la academicidad es una de las que establece los límites de la judicatura[41]. Requiere que, en todo pleito presentado ante un tribunal, exista una controversia real entre las partes[42]. Un caso se vuelve académico cuando el asunto en controversia sucumbe ante el paso del tiempo, "ya sea porque ocurrieron cambios en los hechos o el derecho, y la misma se vuelve inexistente"[43]. En consecuencia, el dictamen que emita el tribunal no tendrá un efecto práctico entre las partes[44]. Es decir:

> Los tribunales pierden su jurisdicción sobre un caso por academicidad cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia[45].

Por ausencia de caso o controversia o por motivo de autolimitación judicial, "los tribunales debemos abstenernos de considerar los méritos de un caso cuando determinemos que el mismo se ha tornado académico"[46]. Ahora bien, existen cuatro excepciones a esta doctrina, a saber:

> (1) cuando se presenta una controversia recurrente y capaz de evadir revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado pero no tiene visos de permanencia; (3) cuando la controversia se ha tornado académica para el representante de una clase pero no para otros miembros de la clase; y (4) cuando persisten consecuencias colaterales que no se han tornado académicas[47].

---

[39] *Íd.*, págs. 68-69.
[40] *Sánchez v. Srio. de Justicia*, 157 DPR 360, 370 (2002).
[41] *Bhatia Gautier v. Gobernador*, supra, pág. 73.
[42] *Íd.*; *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014).
[43] *Íd; IG Builders et al. v. BBVAPR*, 185 DPR 307, 334 (2012).
[44] *Íd.*; *IG Builders et al. v. BBVAPR, supra.*
[45] *Íd.*, citando *CEE v. Depto. de Estado*, 134 DPR 927, 935 (1993).
[46] *Bhatia Gautier v. Gobernador, supra*, pág. 73.
[47] *Moreno v. Pres. U.P.R. II*, 178 DPR 969, 974 (2010).

Sin embargo, dichas excepciones "tienen que usarse con mesura, pues no se pueden obviar los límites constitucionales que inspiran la doctrina de academicidad"[48]. El propósito de la doctrina de academicidad es evitar que una determinación que se tornó académica continúe en vigente y obligue a las partes[49]. Por tal razón, procede la desestimación del caso y el tribunal no tiene discreción para negarse, salvo que esté presente alguna de las excepciones[50]. En esa línea, "la desestimación deja el camino libre a la litigación futura de las disputas entre las partes y preserva sus derechos, sin perjudicar a ninguna de ellas por una decisión que era meramente preliminar"[51].

**III.**

En su recurso, la parte apelante solicita la revisión de la *Sentencia* emitida el 6 de diciembre de 2022, notificada el 16 de diciembre de 2022 por el TPI, mediante la cual desestimó con perjuicio la demanda instada por la parte apelante. Un examen minucioso del expediente ante nos mueve a concluir que resulta forzoso confirmar la *Sentencia* apelada.

En su primer señalamiento de error, la parte apelante arguye que el 13 de febrero de 2017, cuando se celebró una vista ante el TPI, se configuró un caso de represalia porque presuntamente la AEELA le informó que no le concedería el preretiro y esto ocurre seis (6) meses antes de que se apruebe la Ley Núm. 106-2017. No tenemos criterios para alterar las determinaciones fácticas del foro sentenciador debido a que no se presentó la transcripción de la prueba oral. Por tanto, no estamos en posición de intervenir con este asunto.

---

[48] *Íd.*
[49] *Íd.*, pág. 975.
[50] *Íd.*, pág. 974.
[51] *Íd.,* pág. 975, citando a *Alvarez v. Smith*, 130 S.Ct. 576, 581 (2009), citando a su vez a *U.S. v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

También, en el primer señalamiento de error, la parte apelante argumenta que su reclamación no se tornó académica porque la Ley Núm. 106-2017 no disponía que la demanda presentada bajo la normativa anterior, Ley Núm. 211-2015, debía ser desestimada.

La Ley Núm. 211-2015 tenía varios requisitos de estricto cumplimiento, no obstante, referente a los empleados notificados sobre su elegibilidad para acogerse a los beneficios del Programa de Preretiro, estos **tenían treinta (30) días calendario para ejercer su opción de participar en el Programa de Preretiro**[52]. Por otro lado, con la aprobación de la Ley Núm. 106-2017, el Artículo 7.1 mantuvo un procedimiento para continuar atendiendo las **solicitudes presentadas** y garantizar las participaciones activas del mismo [53]. Ahora bien, en el caso de autos, la apelante no cumplió con el requisito de ejercer su opción de participar en el Programa de Preretiro, por lo que la determinación del foro primario, en cuanto a que la apelante no puede acogerse al preretiro, es correcta[54]. Además, reiteramos la norma de nuestro Tribunal Supremo respecto a que "[u]n caso se torna académico cuando ocurren cambios en su trámite, ya sea en los hechos o en el derecho, que convierten la controversia en inexistente, de manera tal que el dictamen que tuviera a bien emitir el tribunal no tendría efecto práctico sobre las partes"[55]. Por tanto, el primer error señalado no fue cometido.

Atenderemos el segundo y tercer error de forma conjunta por su estrecha relación. En el segundo y tercer error, la apelante alega que el TPI incidió al interpretar el caso *Ortiz Ortiz v. ELA,* KLAN202000928. Tras revisar la Sentencia del referido caso, atendido por un panel hermano, colegimos que es un hecho indiscutible que en el caso que nos ocupa la parte apelante no

---

[52] *Íd.*
[53] 3 LPRA sec. 9581.
[54] Véase, *Sentencia,* apéndice del recurso, pág. 39.
[55] *IG Builders et al. v. BBVAPR,* 185 DPR 307, 334 (2012).

cumplió con el requisito básico de notificar su intención de participar en el Programa de Preretiro. Las alegaciones presentadas por la parte apelante en cuanto a que no presentó la solicitud por causas atribuibles a su patrono, la AEELA, son imprecisas, superfluas y constituyen meras generalidades carentes de detalles sobre las circunstancias particulares. El segundo y tercer error no fueron cometidos.

En su cuarto señalamiento de error, la parte apelante alega que incidió el TPI porque la Asamblea de Delegados y el Comité Ejecutivo aprobaron la implantación del Programa de Preretiro luego de haberle notificado su elegibilidad. La Ley Núm. 211-2015 exigía que cada empleado de entidad gubernamental, siempre que cualificara y estuviera interesado, debía presentar la solicitud para acogerse al Programa de Preretiro. Dicha solicitud debía incluir la Tasación de Implementación y el Plan Patronal de Preretiro[56]. La Tasación de Implementación del Programa de Preretiro se debía presentar a la OGP en un término no mayor de sesenta (60) días desde que la ley entró en vigor. Art. 4 de la Ley Núm. 211-2015[57]. Surge del expediente que la AEELA cumplió su deber ministerial al ejecutar adecuadamente la Ley Núm. 211-2015. Sin embargo, aun entendiendo que este error pudo haberse cometido, del expediente no surge tan siquiera cómo este error incide en que la parte apelante no haya tomado su decisión voluntaria e individual de beneficiarse del Programa de Preretiro. A tenor con ello, el planteamiento de la parte apelante resulta frívolo, fútil y totalmente inmeritorio, por lo que no justifica la concesión de un remedio judicial. El cuarto señalamiento de error no se cometió.

Referente al quinto señalamiento de error, la parte apelante arguye que la notificación de elegibilidad es defectuosa debido a que

---

[56] *Íd.*
[57] 3 LPRA ant. sec. 9263.

su patrono, la AEELA, no había consumado el proceso interagencial para cuestionar la deuda notificada por la ASR. Coincidimos con el TPI en cuanto especificó que la Ley Núm. 211-2015 delegó a la OGP crear un protocolo para impugnar la alegada deuda notificada por la ASR[58]. Como surge del expediente apelativo, la AEELA cuestionó válidamente la deuda dentro del cauce administrativo[59]. Así pues, colegimos que las controversias interagenciales deben ser resueltas por las agencias concernientes y, para ello, la propia Ley Núm. 211-2015 establece un procedimiento relacionado con el pago de deuda. La situación que pudo haber existido entre la AEELA y la ASR no le privó a la parte apelante de acogerse al Programa Preretiro. Es un hecho demostrado ante el TPI que la empleada incumplió en responder a la notificación remitida el 3 de octubre de 2016 por la AEELA para ser benefactora del Programa de Preretiro. Fíjese que, el Artículo 9 de la referida Ley Núm. 211-2015 establecía que toda elección del empleado para participar en el Programa sería final e irrevocable. No obstante, esta situación no ocurrió porque la parte apelante nunca se acogió al programa. El quinto error señalado no fue cometido.

Por último, discutiremos el sexto señalamiento de error. La parte apelante sostiene que no pudo considerar la oferta de preretiro por no tener conocimiento de la cantidad exacta que le correspondería como pensión. Surge del expediente apelativo que la AEELA cumplió con los parámetros de la Ley Núm. 211-2015 en cuanto a que orientó y le notificó a la parte apelante su elegibilidad al Programa de Preretiro[60]. No nos convencen los argumentos presentados por la parte apelante. Colegimos que las alegaciones vacías a esos efectos son, desde el punto de vista de justicia

---

[58] Véase apéndice del alegato en oposición de la AEELA, pág. 675.
[59] Véase apéndice del alegato en oposición de la AEELA, pág. 786.
[60] Véase apéndice del alegato en oposición de la AEELA, pág. 93.

apelativa, jurídicamente inconsecuentes y las tenemos por no puestas.

Luego de examinar el expediente apelativo, así como los argumentos esgrimidos por las partes, resolvemos que no le asiste la razón a la parte apelante. Nada en el tracto del caso sugiere que la AEELA incumplió con la Ley Núm. 211-2015. Concurrimos con el foro primario en que aquí había un solo curso de acción: la desestimación de la Demanda.

**IV.**

Por los fundamentos expuestos, **confirmamos** la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones